UNITED STATES of America, Appellee,

v.

Raymond Wayne BLUE a/k/a
Budagau, Appellant.

No. 82-1995.

United States Court of Appeals,
Eighth Circuit.

Submitted May 17, 1983.

Decided Dec. 1, 1983.

Neil W. Fleming, Lawrence D. DuBois, Cavalier, N.D., for appellant.

Dennis Fisher, Asst. U.S. Atty., Rodney S. Webb, U.S. Atty., Fargo, N.D., for appellee.

Before BRIGHT, McMILLIAN and JOHN R. GIBSON, Circuit Judges.

McMILLIAN, Circuit Judge.

Raymond Wayne Blue, an enrolled member of the Turtle Mountain Band of Chippewa Indians, appeals his conviction under 21

U.S.C. § 841(a)(1) for distribution of marijuana and possession with intent to distribute marijuana resin (hashish). Appellant's sole ground for reversal is that the district court[1] lacked subject matter jurisdiction over the offenses charged. For the reasons discussed below, we affirm the district court.

On February 4, 1982, a six-count indictment was returned against appellant charging violations of 21 U.S.C. § 841(a)(1).[2] Appellant's motion to dismiss the indictment for lack of subject matter jurisdiction was denied. Appellant thereafter plead guilty to two counts and was sentenced to imprisonment for a period of eighteen (18) months, followed by a two-year term of parole, on each count, sentences to run concurrently. The remaining four counts of the indictment were dismissed.

The events leading to the indictment involved drug sales by appellant to an agent for the Bureau of Indian Affairs. The agent was also an Indian and all transactions took place within the Turtle Mountain Indian Reservation in North Dakota. The Turtle Mountain Tribal Code of 1976 provides that marijuana possession and distribution is a tribal offense, punishable by up to six months imprisonment or a fine of $360, or both. Appellant does not claim that he was punished under this tribal code provision.

Appellant argues that the first exception contained in 18 U.S.C. § 1152, when read in conjunction with the enumerated offenses contained in the Major Crimes Act, 18 U.S.C. § 1153, places exclusive jurisdiction in this case, involving unenumerated Indian-against-Indian offenses, in tribal court. The government argues that jurisdiction lies concurrently in tribal and federal courts.

Title 18 U.S.C. § 1152 states as follows:

Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

Title 18 U.S.C. § 1153 provides that the federal courts shall have exclusive jurisdiction over fourteen major crimes when committed by an Indian against the person or property of another Indian. The offenses here committed are not among the specified crimes.

■ We have previously held that 18 U.S.C. § 1152 and its exceptions do not extend or restrict the application of general federal criminal statutes to Indian reservations. The statute applies only to federal enclave laws and does not encompass federal laws that make actions criminal wherever committed. *Stone v. United States,* 506 F.2d 561 (8th Cir.1974), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975) (*Stone*); *United States v. White,* 508 F.2d 453 (8th Cir.1974) (*White*).

In *Stone,* this court ruled that the federal district court possessed subject matter jurisdiction over the offense of assaulting a police officer employed by the Bureau of Indian Affairs, in violation of 18 U.S.C. §§ 111 and 1114. The perpetrator and the victim of the assault were Indians and the offense occurred on a reservation. In reaching this

**1.** The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota.

**2.** 21 U.S.C. § 841(a)(1) provides: "(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

conclusion, the court offered the following interpretation of 18 U.S.C. § 1152:

The first paragraph of the section extends to Indian country the general laws of the United States that make criminal certain acts committed within the sole and exclusive jurisdiction of the United States. The section refers only to those laws where the situs of the offense is an element of the crime. The second paragraph exempts from the purview of the laws referred to in paragraph one Indians who offend the person or property of another Indian. The exemption does not encompass the laws of the United States that make actions criminal wherever committed.

508 F.2d at 563.

In *White,* we reviewed the history of this provision and reached the same conclusion:

18 U.S.C. § 1152 is not a predicate for general federal criminal jurisdiction in Indian country. Rather the scope of section 1152 is limited to the applicability or nonapplicability of federal enclave laws, those laws passed by the federal government in the exercise of its police powers over federal property and now defined in the United States Code in terms of "special maritime and territorial jurisdiction of the United States," 18 U.S.C. § 7.

508 F.2d at 454–55. The substantive law involved in *White* was 16 U.S.C. § 668(a), a criminal law of general applicability making it unlawful to hunt a bald eagle.

This interpretation of 18 U.S.C. § 1152 has been uniformly accepted. In *United States v. McGrady,* 508 F.2d 13 (8th Cir. 1974), *cert. denied,* 420 U.S. 979, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975), federal jurisdiction was upheld over an Indian convicted under 18 U.S.C. § 1163, a federal statute of general applicability making it a crime to convert or misapply funds belonging to an Indian tribal organization. In *United States v. Butler,* 541 F.2d 730 (8th Cir.1976), a conviction for unlawful possession of a firearm by a felon, in violation of 18 U.S.C.

app. § 1202(a), was affirmed when committed by an Indian on an Indian reservation. *See also United States v. Farris,* 624 F.2d 890 (9th Cir.1980), *cert. denied,* 449 U.S. 1111, 101 S.Ct. 920, 66 L.Ed.2d 839 (1981) (operating gambling business in violation of 18 U.S.C. § 1955); *United States v. Olvera,* 488 F.2d 607 (5th Cir.1973), *cert. denied,* 416 U.S. 917, 94 S.Ct. 1625, 40 L.Ed.2d 119 (1974) (possession of amphetamine in violation of 21 U.S.C. § 844(a).

We recognize that *Stone* involved a crime of a peculiarly federal nature. Nevertheless, we adopt its interpretation of 18 U.S.C. § 1152 as generally valid and applicable to all general federal criminal laws including the federal law on possession and distribution of controlled substances.[3] This holding does not represent any further infringement upon tribal sovereignty or self-government. Because of their unique history, Indian reservations differ in certain respects from federal enclaves. Thus, if a particular Indian right or policy is infringed by a general federal criminal law, that law will be held not to apply to Indians on reservations unless specifically so provided. *White,* 457 F.2d 435. In *White,* this court stated "areas traditionally left to tribal self-government ... have enjoyed an exception from the general rule that congressional enactments, in terms applying to all persons, includes Indians." *Id.* at 455. Because hunting rights were reserved to the Indians in earlier treaties and were governed by their tribal law, the federal criminal law prohibiting hunting bald eagles was held not to apply to Indians on reservations. *Id.* In the present case, no claim is made that any particular traditional Indian right or tribal concern is threatened by enforcement of the federal drug statute on the reservation.

It is undisputed that Indian tribes have the power to enforce their criminal laws against tribe members. Although physically within the territory of the United States and subject to federal control, they

---

**3.** *Stone* is cited with approval by the Supreme Court in *United States v. Wheeler,* 435 U.S. 313, 330 n. 30, 98 S.Ct. 1079, 1090 n. 30, 55 L.Ed.2d 303 (1978), without limiting its holding to the type of crime involved, *i.e.* assault of a federal officer.

remain "a separate people" with attributes of sovereignty over their members, including the right to prescribe laws and to enforce those laws by criminal sanctions. *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *United States v. Antelope,* 430 U.S. 641, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977). Thus, the Turtle Mountain tribe possesses the power to punish a member who violates the tribal code's marijuana provisions. But the district court also possesses subject matter jurisdiction over the federal offense charged here. *See United States v. Smith,* 562 F.2d 453, 455–58 (7th Cir.1977), *cert. denied,* 434 U.S. 1072, 98 S.Ct. 1256, 55 L.Ed.2d 775 (1978).[4]

This result is consistent with the Indian Major Crimes Act, 18 U.S.C. § 1153. The precursor to this statute was passed by Congress in direct response to the decision of *Ex parte Crow Dog,* 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030 (1883), where the Supreme Court held that the Indian tribe retained exclusive jurisdiction over the murder of one Indian by another on a reservation. *See Keeble v. United States,* 412 U.S. 205, 209, 93 S.Ct. 1993, 1996, 36 L.Ed.2d 844 (1973).

An early Supreme Court case, *United States v. Quiver,* 241 U.S. 602, 36 S.Ct. 699, 60 L.Ed. 1196 (1916) (*Quiver*), gives some support to appellant's argument that the Major Crimes Act was intended to be the exclusive basis for federal prosecution of Indians in Indian territory. In *Quiver* the Court stated, "the enumeration in the [Major Crimes Act] of certain offenses as applicable to Indians in the reservations, carries with it some implication of a purpose to exclude others." *Id.* at 606, 36 S.Ct. at 701.

*Quiver,* however, concerned a prosecution for adultery, deemed to be an internal and social tribal matter. As characterized by the court in *United States v. Howard,* 654 F.2d 522 (8th Cir.1981), *Quiver* was a case which involved "merely the relations of Indians among themselves." *Id.* at 526–27. *Quiver* has not been read to preclude federal prosecutions under general criminal federal statutes not involving such matters. *See United States v. Smith,* 562 F.2d at 455–58; F. Cohen, *Handbook of Federal Indian Law* 330–32 (1982 ed.).

Our conclusion that the district court has subject matter jurisdiction over the crimes charged is supported by the statutory limitation on the punishment tribal courts can impose, to imprisonment for six months, or a fine of $500, or both. 25 U.S.C. § 1302. A conviction under 21 U.S.C. § 841(a)(1) carries with it the possibility of a federal sentence of fifteen years in prison and a fine of $25,000. In limiting tribal punishment powers to relatively mild penalties, Congress must have assumed that Indians on reservations would generally be subject, as all other citizens are, to federal criminal sanctions which apply to all persons.

Accordingly, the judgment of conviction is affirmed.

---

4. Having held that 18 U.S.C. § 1152 does not extend 21 U.S.C. § 841(a) to the Turtle Mountain Indian Reservation, we need not decide whether possession with intent to distribute or distribution of a drug can properly be characterized as "offenses committed by one Indian against the person or property of another Indian," where both parties involved in the transactions are Indians. Such a determination would only have to be made if the government sought to prosecute appellant for violation of a North Dakota state law. One of the enclave laws which 18 U.S.C. § 1158 extends to Indian reservations is the Assimilative Crimes Act, 18 U.S.C. § 13, which incorporates state-defined offenses into the body of criminal law applicable on enclaves. Applicability of one of the exceptions set forth in the second paragraph of 18 U.S.C. § 1152 would preclude such a prosecution. *See, e.g., Acunia v. United States,* 404 F.2d 140 (9th Cir.1968). We note that the Indian against Indian exception has been read very broadly to include "victimless crimes" affecting only Indians. *United States v. Quiver,* 241 U.S. 602, 36 S.Ct. 699, 60 L.Ed. 1196 (1916) (adultery).